IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 1, 2013

**BRANDON JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 07-01964    J. Robert Carter, Jr., Judge**

---

**No. W2012-01164-CCA-MR3-PC  - Filed December 5, 2013**

---

The Petitioner, Brandon Johnson, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his 2007 conviction for first degree murder, for which he is serving a life sentence. The Petitioner contends that he received the ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

R. Todd Mosley (on appeal); and Mozella Ross (at hearing), Memphis, Tennessee, for the appellant, Brandon Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Amy P. Weirich, District Attorney General; and Anita Spinetta, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's conviction relates to the March 10, 2003 shooting death of Richard McCuin. The State presented eyewitnesses who testified that the Petitioner went to the victim's apartment, pointed a gun at the victim, demanded money, and shot the victim when he said he did not have any money. The eyewitnesses said that the victim did not act aggressively toward the Petitioner and that the Petitioner looked in the victim's pants pockets after he shot the victim. The Petitioner gave a pretrial statement in which he admitted shooting the victim but claimed he did so in self-defense. The Petitioner testified that the victim robbed him of $200 and two $25 rocks of crack cocaine on the date of the shooting.

The Petitioner said he went to the victim's apartment to talk to the victim and attempt to get his money. He took a gun to the victim's apartment, which he claimed he had because he lived in a dangerous neighborhood, but he denied he planned to rob or kill the victim. He said that the victim "jumped" him as soon as he walked into a room in the apartment and that he pulled his gun and shot the victim. He admitted he pushed the victim away before firing the gun but said that the events happened quickly and that the shooting was an accident. He acknowledged that the victim was unarmed. *State v. Brandon Johnson*, No. W2007-01655-CCA-R3-CD, slip op. at 3-6 (Tenn. Crim. App. July 17, 2009), *perm. app. denied* (Tenn. Dec. 21, 2009).

At the post-conviction hearing, the Petitioner testified that he met with counsel for five to ten minutes initially and that he met with counsel once or twice at the jail before the trial, although he said they usually met for five to ten minutes when he came to court. He acknowledged he received a copy of the discovery materials from counsel but said he did not understand them. He agreed that before his arrest, he received Social Security disability benefits for a "mental defect." He agreed that counsel requested a mental evaluation and that he saw at least three doctors for the evaluation. He claimed that he did not read a report stating he read on a second grade level but said that to his knowledge, counsel received the report.

The Petitioner testified that he gave counsel names and telephone numbers for "Shea" and "Randy." He said counsel never told him he had contacted the witnesses or provided him an investigator's report. He said counsel did not call the witnesses at the trial or explain to him why they were not called.

Regarding his meeting with counsel, the Petitioner testified that counsel asked if he had questions, that he said no, and "that was the end of it." He said counsel gave him information about court dates and the possible punishment he faced and asked him "what I would take." When asked if he told counsel he would be interested in a "plea settlement," he said, "I ain't know about it. I ain't know nothing about it, what it meant." He said the possibility of a plea agreement was not explained to him.

The Petitioner testified that counsel never talked to him about the possible defenses or the facts. He said he told counsel that he went to talk to the victim and recover his things and that the shooting was accidental. He said he told counsel that the victim grabbed him and that the victim was known in the neighborhood for robbing people. He said that he testified at the trial but that counsel did not call other witnesses. He said counsel told him he did not have to testify but did not tell him about the ramifications of testifying. He said counsel spent about twenty minutes preparing him to testify. He said that he had a chance to ask counsel questions but that he was "dumb to the law."

-2-

The Petitioner testified that it was "easy" to talk to counsel and that the Petitioner had a clear understanding "[o]n certain things." He said he did not understand what went on at his trial.

Regarding the motion to suppress, the Petitioner testified that he did not talk to counsel about whether he understood the nature of the police questioning and his rights. He agreed he talked to one of the doctors who evaluated him about these matters. He said he did not knowingly and voluntarily waive his rights but acknowledged the court ruled otherwise. He did not think counsel represented him well at the suppression hearing and said counsel could have made arguments about what the witnesses said about him and "what went down."

Regarding his mental capabilities, the Petitioner agreed that one of the mental evaluators, Dr. Steinberg, did not testify at the trial. When asked if he thought he was "all there" at the time of the shooting, he thought he was.

On cross-examination, the Petitioner testified that counsel met with him every time he went to court. He agreed he testified at the trial that the shooting was accidental and in self-defense. He agreed he chose to testify in order to tell the jury what happened. He said he did not know Shea's or Randy's last names. He said that he knew them "from the neighborhood" and that they were not present for the shooting. He said he told counsel everything he knew about the case and identified everyone who might know something about the case. He acknowledged that counsel attempted to argue on his behalf at the trial. He said counsel should have cross-examined witnesses about their lies and inconsistent statements. He said counsel did not explain to him what the State would try to prove, although he said counsel talked to him about "what it carried."

Counsel testified that he had handled about six first degree murder trials when he represented the Petitioner. When asked why the case was pending for over three years, he said there were "extensive mental health continuances" to determine the Petitioner's competency. He said that in speaking with the Petitioner, it was apparent there might be a mental health issue. He said, "They requested a mental retardation specialist speak to [the Petitioner]." He said that after the Petitioner was determined to be competent for a trial, he requested that Dr. Steinberg evaluate whether a basis existed to have the Petitioner's statement suppressed based upon a lack of intellectual capacity. He noted that the Petitioner's IQ was "low." He said that Dr. Steinberg testified at the suppression hearing and that the court denied the motion. He said that he was aware of the Petitioner's limited reading ability and that he tried to be as "slow and patient" as he could, given his caseload. In his opinion, the Petitioner understood the proceedings and "what he was facing." He thought the Petitioner understood the defense. He thought he and the Petitioner always understood each other, although the Petitioner did not always like the things he told him.

Counsel testified that he investigated three witnesses. He said the Petitioner's girlfriend provided an alibi defense but later "backed off." He said that calling an alibi witness was problematic given the Petitioner's claim that the shooting was accidental. He stated that the Petitioner's mother said she had dropped off the Petitioner and "may have been providing his ride to the shooting" and that he did not think it was prudent to present her testimony. He did not think his office was able to locate Steve Jordan and did not recall the Petitioner's stating what Mr. Jordan's testimony would be or if Mr. Jordan was an eyewitness.

Counsel testified that the Petitioner gave a statement to the police in which the Petitioner tried to explain what happened and that counsel did not think an alibi defense would work. He said it was the Petitioner's decision to testify. He said he told the Petitioner he did not have to testify. He said the Petitioner's testimony was consistent with his pretrial statement. In both, the Petitioner stated that there had been a prior incident in which the victim stole drugs from the Petitioner and that he confronted the victim to work things out but did not necessarily plan to kill him. He said that the Petitioner and the victim were both drug dealers and that the Petitioner wanted to see if they could coexist in the neighborhood. He agreed the Petitioner testified that he had been robbed and was going to reclaim his property.

Counsel testified that his trial strategy was to show that the Petitioner did not go to the victim's apartment to kill the victim in order to avoid a felony murder conviction and first degree premeditated murder conviction. He said that he did the best he could given the facts and that the case was a "very difficult" one.

Counsel testified that he had paperwork for a plea offer of thirty-two years. He said the State was never comfortable with the offer and withdrew it before the trial. He said that the Petitioner did not want to accept an offer for more than twenty-five years.

Counsel testified that he visited the Petitioner frequently. He thought the Petitioner understood everything.

On cross-examination, counsel testified that Drs. Steinberg and Hutson did not think a mental capacity defense could be supported. He said the doctors did not find evidence to support an insanity defense. He said he did not schedule a competency hearing because the doctors said the Petitioner was competent and not insane. He said that although Dr. Steinberg's opinion was used at the suppression hearing to try to show that the Petitioner did not understand his *Miranda* rights due to his low IQ, Dr. Steinberg's report did not say the Petitioner was incompetent. He said he did not think the Petitioner's mother's testimony

about the Petitioner's limitations would have been relevant at the trial. He said the Petitioner's mother was "a little bit not all there," as well.

Counsel testified that the Petitioner had trouble talking and was difficult to understand. He thought, though, that they were able to communicate effectively and that the Petitioner understood everything. He said the Petitioner asked questions and offered information. He disagreed with the Petitioner's testimony that counsel mailed the discovery packet to the Petitioner but never reviewed it with him. He said that he would have mailed it in order to get it to the Petitioner but that they reviewed the information. He thought he received the *Jencks* material before the trial, and because it would have been his standard practice, he thought he reviewed it with the Petitioner.

Counsel testified that he did not think it would be credible to call "Ms. Reed," an alibi witness, given the Petitioner's admission he shot the victim. He said the Petitioner's mother told his investigator that she may have dropped off the Petitioner at the crime scene. He said a third person could not be found. He said that at the time of the trial, he thought it was best not to call these witnesses. He said his investigator, not he, spoke to the witnesses.

Counsel testified that he did not think it was prudent to focus on self-defense in closing argument, although the court charged self-defense in the jury instructions and he may have "touched on" it. He said he used the more credible argument that the Petitioner was not there to commit a robbery or kill the victim.

In its order denying post-conviction relief, the trial court found:

> In this case, Petitioner has not shown that his trial attorney was deficient in any way. His trial attorney met with him, took the extra patience needed to effectively communicate with him and thoroughly pursued all avenues open with an eye toward preparing a defense. This Court finds that trial counsel pursued the mental health issue and fully presented a Motion to Suppress. Upon that Motion being denied, counsel adapted to a strategy that included dealing with the admission into evidence of the Petitioner's statement.

> Upon finding that the attorney was not deficient, no analysis is required to determine whether there was any prejudicial effect.

> This is a case where the jury rejected the claim of accident or self-defense and accredited the State's witnesses. It was not the fault of the trial attorney.

. . . .

The Petitioner has failed to carry his burden of proof.

This appeal followed.

The Petitioner contends that trial counsel was ineffective for failing to call Shea and Randy as witnesses at the trial. The State counters that the Petitioner failed to offer evidence of how these witnesses would have testified at the trial if they had been called and that he failed to establish counsel was ineffective. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

The Petitioner's brief fails to explain why Shea and Randy were relevant witnesses who would have benefitted the defense. He likewise failed to offer their testimony or other evidence at the hearing to show what their trial testimony would have been if they had been called as witnesses. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that as a general rule, a petitioner can only establish ineffective assistance from failure to call a trial witness by presenting the witness's testimony at the post-conviction hearing). The evidence shows that Shea, who we presume is the same person counsel identified as Ms. Ross, initially provided an alibi for the Petitioner but later "backed off." Counsel thought that calling this witness to establish an alibi would have diminished the credibility of the defense, given the Petitioner's admission he shot the victim. We note, as well, that the witness was equivocal about the alibi. Regarding Randy, the evidence shows that counsel's investigator attempted to locate him but was unsuccessful. There was no evidence that counsel's attempts through his investigator to find Randy were inadequate. *See id.* at 757-58 (stating that a petitioner is not entitled to post-conviction relief for failure to call a material witness unless he shows that the witness could have been found through reasonable investigation and would have testified favorably for the defense). Counsel cannot be faulted for failing to present a witness he attempted to find but could not. The Petitioner failed to show that counsel's performance was deficient or that he was prejudiced from counsel's failure to call the witnesses at the trial. The trial court did not err in concluding that the Petitioner failed to prove his claims by clear and convincing evidence. *See* T.C.A. § 40-30-110(f).

In reaching this conclusion, we have not overlooked the Petitioner's argument that the general rule of *Black* regarding the necessity that a petitioner present the testimony of a witness at the post-conviction hearing in order to establish ineffective assistance from counsel's failure to call the witness at the trial, is not absolute. *See Black*, 794 S.W.2d at 757. We acknowledge that our supreme court has granted relief despite a petitioner's failure to call a witness at a post-conviction hearing. *See Pylant v. State*, 263 S.W.3d 854 (Tenn. 2008). In *Pylant*, the court noted that despite the general rule requiring the witness to testify at the post-conviction hearing, the petitioner presented evidence of the witness's inculpatory statements through other witnesses, and the witness might have refused to testify given her inculpatory statements in a homicide. *Id.* at 872-73. The court also noted the materiality of the evidence because it implicated a third person, rather than the petitioner, in the crime. *Id.* at 873. In the present case, though, the Petitioner has not argued why the general rule of *Black* should not apply, and no reason is apparent.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE